UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

GREAT NORTHERN INSURANCE CO., as : 
subrogee of CHARLES WINKLER and :
JONNIE TAYLOR, h/w :
and :
CHARLES WINKLER and JONNIE :
TAYLOR, :
      Plaintiffs, :
: CIVIL ACTION NO.
v. : 3:04-CV-899(JCH)
:
RLJ PLUMBING & HEATING, INC., et al., :
      Defendants : MAY 23, 2006

**RULING  RE: CROSS MOTIONS FOR SUMMARY JUDGMENT [DOC. NOS. 75 & 80]**

      This action arises out of an incident involving frozen pipes in the Greenwich, Connecticut home of the plaintiffs, Charles Winkler and Jonnie Taylor.  The plaintiffs, Winkler, Taylor, and Great Northern Insurance Company, acting as subrogee of the individual plaintiffs, have brought suit against various parties that were involved in the construction of Winkler and Taylor's home.  R.S. Granoff Architects ("Granoff") is the only remaining defendant in the action.

      This action was brought in this court on the basis of diversity jurisdiction, 28 U.S.C. § 1332.  The allegations of the Complaint indicate that Winkler and Taylor are Connecticut residents, and that Granoff is a professional corporation organized under Connecticut law.  Amended Complaint [Doc. No. 60, ¶¶ 2, 7.  However, the allegations of the Complaint also indicate that Winkler and Taylor have subrogated their claim completely to Great Northern, which is a Minnesota corporation.  Id. at ¶¶ 1, 21, 51, 56.

Winkler and Taylor are therefore merely "nominal" parties for purposes of diversity jurisdiction, and Great Northern is the only real party in interest.  See St. Paul Fire and Marine Ins. Co. v. Univ. Builders Supp., 409 F.3d 73, 80-82 (2d Cir. 2005).  Accordingly, this case falls within the court's subject matter jurisdiction under 28 U.S.C. § 1332.

The plaintiffs (collectively, "Great Northern"), assert claims against Granoff for negligence (Count VII) and breach of the implied warranty provided under Conn.Gen Stat. § 47-121 (Count VIII).  Granoff has moved for summary judgment against Great Northern for both of these claims, arguing, inter alia, that no genuine issues of material fact exist with regard to Great Northern's inability to prove essential elements of its claims against Granoff.  Great Northern has not opposed Granoff's summary judgment motion.  It has, however, moved for summary judgment against Granoff on Count VIII, arguing, inter alia, that no genuine issues of material fact exist with regard to Granoff's breach of the warranty implied under Conn.Gen.Stat. § 47-121.

For the following reasons, Granoff's motion for summary judgment is GRANTED, and Great Northern's motion for summary judgment is DENIED.

## I.    FACTUAL BACKGROUND[1]

---

[1]For the purposes of the instant cross-motions for summary judgment on Great Northern's warranty claim, the court accepts facts undisputed by the parties as true.  For purposes of Granoff's motion for summary judgment on Great Northern's negligence claim, the court accepts facts undisputed by the parties as true and resolves factual disputes in favor of Great Northern where there is admissible evidence to support its assertions.

Because Great Northern did not respond to Granoff's motion for summary judgment, the material factual statements in Granoff's Rule 56(a)(1) Statement are deemed admitted where there is evidence to support them.  See Loc. R. Civ. P. 56(a)(1)("All material facts set forth in said statement and supported by the evidence will be deemed admitted unless

This action arises from damage allegedly caused by frozen water pipes in January 2004 in the second floor bathroom of the house located at 10 Taconic Road in Greenwich, Connecticut. Amended Complaint, ¶ 19.

Fountainhead Homes Taconic, LLC ("Fountainhead") was the developer and seller of the home. Fountainhead contracted with Granoff to provide architectural services with respect to 10 Taconic Road. Fountainhead and Granoff memorialized their agreement in writing on December 15, 1999 through the use of Standard American Institute of Architects ("AIA") Document B155, entitled "Standard Form of Agreement Between Owner and Architect for a Small Project." Def's Rule 56(a)(1) Statement, Ex. A. The contract incorporates by reference AIA Document A205, "General Conditions of the Contract for Construction of a Small Project." Id. at Ex. B.

Fountainhead had also contracted with DAS Associates to serve as the general contractor for the construction of the property. Fountainhead and DAS Associates memorialized their relationship in writing on January 15, 2000 through the use of Standard AIA Document A101CMa, entitled "Standard Form of Agreement Between Owner and Contractor Where the Basis of Payment is a Stipulated Sum." Id. at Ex. C. This contract incorporates by reference AIA Document A201CMa, entitled "General Conditions of the Contract for Construction." Id. at Ex. D.

Pursuant to contract, Granoff provided design drawings for the construction of

---

controverted by the statement required to be filed and served by the opposing party in accordance with Local Rule (56)(a)(2)").

the new home.  The drawing established the location of the bathroom and plumbing fixtures in the second floor bathroom in question, but did not detail how the piping to the fixtures would be run or make any provisions to "freeze protect" the pipes.  According to Richard Granoff, a member of the defendant firm who was personally involved in the construction of 10 Taconic Road, the protection of the pipes was the responsibility of the plumbing subcontractor.  In a expert witness report that was prepared by Ronald Parsons on behalf of Great Northern and submitted by Great Northern in support of its motion for summary judgment, the plaintiff's expert noted that "there were numerous ways that the plumber could have routed the hot and cold water feed lines to the vanity sink so that they were in heated space for their entire run."  Pls' Rule 56(a)(1) Statement [Doc. No. 81], Ex. 4, p. 5.

During the construction phase, Richard Granoff visited the work site about once a week.  He did not, however, inspect the plumbing in the bathroom in question, nor did any contractor or subcontractor consult with Granoff regarding the placement or insulation of the pipes in the second floor bathroom.

In May 2001, Fountainhead entered into an agreement for the sale of 10 Taconic Road to Winkler and Taylor.  In June 2001, a Certificate of Occupancy was issued by the Town of Greenwich for 10 Taconic Road.  In July 2001, Fountainhead transferred the title for 10 Taconic Road to Winkler and Taylor.  Granoff never held the title to 10 Taconic Road.

4

## II.   LEGAL STANDARD

Summary judgment is appropriate only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Hermes Int'l v. Lederer de Paris Fifth Ave, Inc., 219 F.3d 104, 107 (2d Cir. 2000). The moving party bears the burden of showing that no genuine factual dispute exists. Carlton v. Mystic Transp., Inc., 202 F.3d 129, 133 (2d Cir. 2000) (citing Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994)).  "A fact is 'material' for these purposes when it might affect the outcome of the suit under the governing law."  Jeffreys v. City of New York, 426 F.3d 549, 553 (2d Cir. 2005)(quotation marks omitted).  When reasonable persons applying the proper legal standards could differ in their responses to the questions raised on the basis of the evidence presented, the question is best left to the jury.  Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000).

Once the moving party has met its burden, in order to defeat the motion the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), and present such evidence as would allow a jury to find in his favor, Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).  A party may not rely "on mere speculation or conjecture as to the true nature of the facts to overcome a Summary Judgment Motion."  Lipton v. The Nature Company, 71 F.3d 464, 469 (2d Cir. 1995) (quoting Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986)).  Additionally, a party may not rest on the "mere

5

allegations or denials" contained in his pleadings.  Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995); see also Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993) (holding that party may not rely on conclusory statements or an argument that the affidavits in support of the Summary Judgment Motion are not credible).  Moreover, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Jeffreys, 426 F.3d at 554.

### III.     DISCUSSION

#### A.     The Negligence Claim (Count VII)

In its Complaint, Great Northern alleges, inter alia, that Granoff was negligent in failing to supervise the activities of its agents, subcontractors, and employees in their failure to properly "freeze protect" the piping in the second floor bathroom; failing to coordinate the activities of the subcontractors to insure that the piping was properly insulated; for approving the installation of the piping; and for failing to properly freeze protect the pipes.[2]  Amended Complaint, ¶ 50.  Granoff has moved for summary judgment, arguing, inter alia, that it did not have a duty to inspect the piping in question that could support a negligence claim and that Great Northern has failed to disclose a necessary expert to testify on the applicable standard of care.

The existence of a duty of care is a necessary element of a negligence claim.

---

[2]Great Northern does not allege, nor has produced evidence that could demonstrate, that Granoff was negligent in its design of the second floor bathroom.

See LaFlamme v. Callessio, 261 Conn. 247, 251 (2002).  "The existence of a duty of care is a question of law and only if such a duty is found to exist does the trier of fact then determine whether the defendant violated that duty in the particular situation at hand."  Gerber Trade Finance, Inc. v. Davis, Sita & Co., P.A., 128 F.Supp.2d 86, 95 (D.Conn. 2001) (quoting Petriello v. Kalman, 215 Conn. 377, 382-83 (1990)).  "If a court determines, as a mater of law, that a defendant owes no duty to a plaintiff, the plaintiff cannot recover in negligence from the defendant."  Id. (internal quotation marks omitted).

"Duty is a legal conclusion about relationships between individuals, made after the fact . . . . The nature of the duty, and the specific persons to whom it is owed, are determined by the circumstances surrounding the conduct of the individual."  Lombard v. Edward J. Peters, Jr., P.C., 252 Conn. 623, 632-633 (2000). "A duty to use care may arise from a contract, from a statute, or from circumstances under which a reasonable person, knowing what he knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result from his act or failure to act."  Ward v. Greene, 267 Conn. 539, 547 (2004).  "[T]he test for the existence of a legal duty of care entails (1) a determination of whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result, and (2) a determination, on the basis of a public policy analysis, of whether the defendant's responsibility for its negligent conduct should extend to the particular consequences or particular plaintiff in

the case." Murillo v. Seymour Ambulance Assoc., Inc., 264 Conn. 474, 479 (2003). While "the ultimate test of the existence of the duty to use care is found in the foreseeability that harm may result if it is not exercised," Lombard, 252 at 636, '[a] simple conclusion that the harm to the plaintiff was foreseeable cannot by itself mandate a determination that a legal duty exists." Murillo, 264 Conn. at 479 (quoting Lombard).

Here, the duties and obligations of Granoff in the construction of 10 Taconic Road were established by its contract with Fountainhead, and indirectly through the contract between Fountainhead and DAS Associates. The language of the contracts, considered in their entireties, demonstrate that Granoff had no contractual duty to inspect the plumbing work in the bathroom, and that such a duty rested with the general contractor, DAS Associates. Accordingly, Granoff was not in a position to know, nor should have known, whether the bathroom piping was properly insulated, and it assumed no duty concerning the proper insulation of that piping.

Section 1.2 of the contract between Fountainhead and Granoff states that the architect's services during construction include "visiting the site, reviewing and certifying payments, reviewing the Contractor's submittals, rejecting nonconforming Work, and interpreting the Contract documents." Def's Rule 56(a)(1) Statement, Ex. A. In its motion for summary judgment, Great Northern suggests that this language establishes Granoff's duty to inspect the bathroom. However, several provisions in the A-205 General Conditions document, which is incorporated by reference into Granoff's

contract, articulate the limited extent and purpose of Granoff's inspections. Section 3.3.1 of Document A-205 states that "[t]he Contractor shall supervise and direct the Work, using the Contractor's best skill and attention. The Contractor shall be solely responsible for and have control over construction means, methods, techniques, sequences and procedures, and for coordinating all portions of the Work." Id. at Ex. B. Article 4 of Document A-205 sets forth the extent of the responsibilities of the architect. It states, in relevant part:

> § 4.1 The Architect will provide administration of the Contract as described in the Contract Documents. The Architect will have authority to act on behalf of the Owner only to the extent provided in the Contract Documents.
>
> § 4.2. The Architect will visit the site at intervals appropriate to the stage of construction to become generally familiar with the progress and quality of the Work.
>
> § 4.3 The Architect will not have control over or charge of and will not be responsible for construction means, methods, techniques, sequences or procedures, or for safety precautions and programs in connection with the Work, since these are solely the Contractor's responsibility. The Architect will not be responsible for the Contractor's failure to carry out the Work in accordance with the Contract Documents. . . .
>
> § 4.5 The Architect will have authority to reject Work that does not conform to the Contract Documents.
>
> § 4.6 The Architect will promptly review and approve or take appropriate action upon Contractor's submittals such as Shop Drawings, Product Data and Samples, but only for the limited purpose of checking for conformance with information given and the design concept expressed in the Contract Documents.   . . .

Id.

      The contract between Fountainhead and DAS Associates contains similar

language. Section 3.3.1 of the A201/Cma general conditions document, which is incorporated by reference into the contract between Fountainhead and DAS Associates, provides that "[t]he Contractor shall supervise and direct the Work, using the Contractor's best skill and attention. The Contractor shall be solely responsible for and have control over construction means, methods, techniques, sequences and procedures for coordinating all portions of the Work under this Contract . . . ." Id., Ex. D. Section 3.7.4 provides that "[i]f the Contractor performs Work knowing it to be contrary to laws, statutes, ordinances, building codes, and rules and regulations without such notice to the Construction Manager, Architect and Owner, the Contractor shall assume full responsibility for such Work and shall bear the attributable costs." Id. Most pertinent here is section 4.6.5, which provides that,

> The Architect will visit the site at intervals appropriate to the stage of construction to become generally familiar with the progress and quality of the completed Work and to determine in general if the Work is being performed in a manner indicating that the Work, when completed, will be in accordance with the Contract Documents. However, the Architect will not be required to make exhaustive or continuous on-site inspections to check quality or quantity of the Work. On the basis of the on-site observations as an architect, the Architect will keep the Owner informed of progress of the Work, and will endeavor to guard the Owner against defects and deficiencies in the Work.

Id.

Under the division of work and responsibility established by these contracts, it is apparent that Granoff had a duty to inspect the construction to ensure that it conformed to the contract documents but was not charged with inspecting the workmanship of the general contractor or its subcontractors to ensure that the work was performed

according to specific standards and municipal codes. Moreover, responsibility for the quality of the workmanship clearly fell on the general contractor. There was, therefore, no duty on Granoff to inspect the insulation of the plumbing in the second floor bathroom that arose from the contracts concerning the construction of 10 Taconic Road.

Great Northern has not identified, nor has the court found, any other source of duty, arising from common law or otherwise, which would make Granoff, as an architect, responsible for the work of the contractor and plumbing subcontractor in the second floor bathroom. Cf. Scott v. Regency Developers, Inc., No. 417639, 2000 WL 1781846, at *1 (Conn. Super. Nov. 8, 2000)("In general, and absent a contractual provision to the contrary, a professional, whose performance depends on the quality of performance rendered earlier by another professional, is not responsible for deficiencies in the other professional's performance, unless he knew or should have known that the other's performance was deficient."); Lavy v. W & M Construction Corp., No. X08CV010187185S, 2003 WL 21494198, *2 (Conn. Super. June 10, 2003) (finding that there is no common law implied warranty of merchantability and usability attached to the rendering of architectural services in Connecticut); Cruet v. Carroll, No. X06CV000166704S, 2001 WL 1570228 (Conn. Super. Nov. 27, 2001) (surveying cases, finding that architects may be found liable for negligence in the provision of their services but that no warranty of fitness applied to architects).

Moreover, the scheme of responsibility and labor established by the contracts

concerning 10 Taconic Road demonstrate that Granoff could not have foreseen, nor should have foreseen, the potential damage that could be caused by the improper placement and insulation of the pipes in the second floor bathroom. Because it was not Granoff's responsibility under contract to inspect the "construction means, methods, techniques, sequences and procedures" used in the plumbing of the second floor bathroom, it was not in a position to prevent the harm that allegedly occurred in the instant case. Def's Rule 56(a)(1) Statement, Ex. B. In addition, this responsibility was accounted for within the contract scheme, and it fell on the general contractor, DAS Associates. See Town of Fairfield v. Commercial Roofing, No. (X02) CV 02-0175746-S, 2003 WL 21805471, at * 2 (Conn. Super. July 21, 2003) (finding that plaintiff could not sustain a claim against an architect for "failure to supervise" where contractual similar to those in the instant case provisions established the relationships between the architect and general contractor).

      Therefore, the court concludes, Granoff had no duty to inspect the workmanship of the second floor plumbing in such a manner that could have prevent the alleged harm that occurred, i.e., the freezing of the pipes. See Murillo, 264 Conn. at 479. Accordingly, Granoff's motion for summary judgment is GRANTED with regard to Count VII of Great Northern's Complaint.[3]

---

[3] Summary judgment in favor of Granoff is also appropriate on the basis that Great Northern has not demonstrated that it had disclosed an expert witness to testify about the professional standard of care required of architects in Granoff's position, as would be required to sustain its burden of proof on its negligence claim. See Matyas v. Minck, 37 Conn.App. 321, 327 (Conn. App. 1995)("In cases involving claims of professional

### B.     The Conn.Gen.Stat. § 47-121 Claim (Count VIII)

Granoff and Great Northern have both moved for summary judgment on Count VIII of Great Northern's Complaint. Granoff argues, inter alia, that the statutory warranty contained in Conn.Gen.Stat. § 47-121 does not apply to Granoff because it is not "the vendor who constructed" the dwelling in question. Great Northern argues, to the contrary, that Granoff is a vendor under the definition of that term in Conn.Gen.Stat. § 47-116, and that "the issuance of a certificate of occupancy creates an implied warranty by anyone involved in the creation of a residential structure that the construction complies with the building code." Pls' Mot. for Summary Judgment [Doc. No. 80], p. 2.

Conn.Gen. Stat. § 47-121 is a provision within Connecticut's New Home Warranty Act ("NHWA"). It provides, in relevant part:

> [T]he issuance by the building department of any municipality of a certificate of occupancy for any newly constructed single-family dwelling shall carry an implied warranty to the purchaser of such dwelling from the vendor who constructed it that such vendor has complied with the building code or the customary application and interpretation of the building code of such municipality. . . .

Conn.Gen.Stat. 47-121. Conn.Gen.Stat. 47-116 defines "vendor," as used in the NHWA, as "any person engaged in the business of erecting or creating an improvement on real estate."

---

negligence, as here, expert testimony is essential to establish both the standard of skill and care applicable and that the defendant failed to conform to the standard, as these matters are outside the knowledge of the jury.").

13

In interpreting the language of 47-116, in light of its commonly approved meaning and the surrounding statutory scheme, the court finds that Granoff, as an architect, is not within the definition of "vendor" in 47-116.  In interpreting a statute, the Connecticut courts look first to the language of the statute in relationship to other statutes. Conn.Gen. Stat § 1-2z ("The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes.") "The words of a statute are to be given their commonly approved meaning unless a contrary intent is clearly expressed," Oxford Tire Supply, Inc. v. Comm'r of Revenue Servs., 253 Conn. 683, 696 (2000) (citation and internal quotation marks omitted), or "the context indicates that a different meaning was intended," Stamford Ridgeway Assocs. v. Bd. of Representatives, 214 Conn. 407, 425 (1990) (citation and internal quotation marks omitted).

Simply put, Great Northern has not demonstrated a genuine issue of material fact as to whether Granoff, in its limited role as an architect, participated in the physical construction of 10 Taconic Road.  It therefore was not in the business of "creating" or "erecting" any improvement on real estate, as those terms are commonly used. Moreover, the purpose of the warranties provided under the NHWA is clearly to provide security to home buyers from faulty construction in the construction of their homes from those responsible for its actual construction.  See Conn.Gen.Stat. § 47-118; see also Mitchell v. Madison Enter. of Conn., Inc., No. CV 9057188S, 1997 WL 297725, at *10 (Conn. Super. May 21, 1997) ("The purpose of [section 47-121] was . . . to impose

liability on the builder-seller . . . because 'non-compliance with the building code often will not be immediately apparent to home owners.'") (quoting Bartone v. Robert L. Day Co., 232 Conn. 527, 535 (1995). The court therefore concludes that Granoff, as an architect, is not within the definition of "vendor" under section 47-116.

Alternatively, even if section 47-116 were to be interpreted broadly so as to include architects within the definition of vendors, when the use of that term in section 47-121 is viewed in the context of other provisions of the NHWA, as well as in the context of the particular undisputed facts of this case, it is apparent that section 47-121 does not apply broadly to all such possible vendors under section 47-116, as Great Northern suggests, nor does it apply to Granoff in this instance. See Four Beaches Condo. v. W.C. Brescia Plumb. & Heating, Inc., CV 960384124, 1997 Conn. Super. LEXIS 1458, at *6 (Conn. Super. May 23, 1997)("Connecticut courts have given a broad construction to the term 'vendor' in the New Home Warranties Act.") (internal quotation marks omitted).

The term "vendor" in section 47-121 appears within the phrase "the vendor who constructed [the dwelling in question]." In contrast, in other provisions of the NHWA, the term "vendor" is not qualified by similar language regarding construction, but instead appears alone in a manner that is not exclusively singular. See Conn.Gen.Stat. §§ 47-117 ("Express warranties by a vendor are created as follows . . ."); 47-118 ("In every sale of an improvement by a vendor to a purchaser"); 47-119 ("Any vendor who conveys an improvement . . ."). The phrase in section 47-121, therefore, demonstrates

an intention on the part of the Connecticut legislature to limit the class of vendors subject to the warrant contained in section 47-121 to only <u>the</u> single vendor responsible for the <u>construction</u> of the dwellings covered by the NHWA, and not all parties possibly within the definition of vendor contained in section 47-116.  See <u>Hatt v. Burlington Coat Factory</u>, 263 Conn. 279, 294 (2003) (describing the tenet of statutory construction known as "<u>expressio unius est exclusio alterius</u>, translated as the expression of one thing is the exclusion of another.").  This interpretation is consistent with the purpose of the statute.  See <u>Mitchell</u>, 1997 WL 297725, at *10.

The contract documents described above demonstrate that DAS Associates was "the vendor who constructed" 10 Taconic Road, and that DAS Associates was responsible for ensuring compliance with the municipal code that is the subject of the warranty contained in section 47-121.  The contract documents also demonstrate that Granoff provided architectural services to Fountainhead, and that, as the architect, Granoff was not responsible for the quality of the construction work or the compliance with municipal codes.  Great Northern has not produced facts sufficient to create a geniune issue of material fact as to whether Granoff acted in a manner that deviated from the architect's role as it was established by the contract documents such that it "constructed" 10 Taconic Road.  Granoff, therefore, cannot be considered, as the phrase is employed in section 47-121, "the vendor who constructed" 10 Taconic Road.[4]

---

[4]The court is aware of the holding in <u>DeMicco v. William Milo Barnum Assocs., Inc.</u>, No. CV 950149236S, 1996 WL 646754 (Conn. Super. Oct. 28, 1996), in which the Superior Court found, in the context of a motion to strike, that an architect could be

16

Therefore, no genuine issue of material fact exists with regard to Great Northern's inability to sustain a claim against Granoff under Conn.Gen.Stat. § 47-121.

Accordingly, Granoff's motion for summary judgment on Count VIII of Great Northern's complaint is GRANTED, and Great Northern's motion for summary judgment is DENIED.

## IV.   CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment [Doc. No. 75] is GRANTED and the plaintiff's motion for summary judgment [Doc. No. 80] is DENIED.   The clerk of court is directed to close the case.

---

potentially liable as a vendor under Conn.Gen.Stat § 47-116. Id. at *1.  For the reasons described above, the class of vendors designated in section 47-121 is more narrow than the class designated in section 47-116.  In addition, the allegations in DeMicco suggested that the architect there was involved in the construction of the dwelling, as Granoff was not in the instant case. Id.   Similarly, in Fava v. Arrigoni, 35 Conn.Supp. 177 (Conn. Super. 1979), a subcontractor was found, in an opinion addressing a motion to strike, to be potentially liable as a vendor under the Conn.Gen.Stat. 52-563a (now section 47-121).  A subcontractor, as opposed to an architect, has a role in the actual construction of a dwelling, and it is therefore more reasonable that liability for failure to comply with applicable building codes may attach to it.  Moreover, the court in Fava rested its conclusion solely on the definition of vendor in section 47-116 and did not consider the qualifying terms employed in section 47-121.  See id. at 179.

**SO ORDERED.**

 Dated this 23rd day of May, 2006, at Bridgeport, Connecticut.

        <u>/s/ Janet C. Hall      </u>
        Janet C. Hall
        United States District Judge